MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:   (310) 271-6223
Facsimile:     (310) 271-9805
michael.berger@bankruptcypower.com

Proposed Counsel for Debtor and Debtor-in-Possession,
Yankee Clipper Distribution of California, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | CASE NO.: 6:18-bk-11664-MJ |
| | Chapter 11 |
| YANKEE CLIPPER DISTRIBUTION OF CALIFORNIA, INC., | DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF |
| Debtor and Debtor-in-Possession. | |
| | Date    TBD |
| | Time:   TBD |
| | Ctrm:   301 |
| | Place:  3420 Twelfth Street |
| |            Riverside, CA 92501 |

TO THE HONORABLE MEREDIT A. JURY, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, TO SECURED CREDITOR THE INTERNAL REVENUE SERVICE, TO THE OFFICE OF THE UNITED STATES TRUSTEE, AND TO ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT the Debtor moves this court for an order

1

authorizing the debtor-in-possession to use the cash collateral of the Internal Revenue Service ("IRS") as set forth herein.

In order to effectively reorganize, Debtor must be able to use the cash collateral of the IRS in order to pay the reasonable expenses it incurs during the ordinary course of its business. The Debtor requests authority to approve interim use of cash collateral, as set forth in the attached cash collateral budget, incorporated herein as **Exhibit "1."** Use of the cash collateral as proposed by the Debtor will allow the Debtor to continue doing business and preserving the Debtor's assets for the benefit of the estate and the creditors, specifically including the Secured Creditor. The Debtor has a reasonable prospect of reorganizing through chapter 11. The continued use of cash collateral to ensure no interruption of Debtor's business will further allow Debtor to emerge as a reorganized Debtor.

This motion is made on the basis of the Declaration of Pavan Makker, the within Points and Authorities, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

WHEREFORE, Debtor asks that this Court authorize interim use of IRS' cash collateral, as set forth herein, and for any other relief deemed necessary and proper.

LAW OFFICES OF MICHAEL JAY BERGER

Date: 3/12/18     By: _____
Michael Jay Berger
Proposed Counsel for Debtor
Yankee Clipper Distribution of
California, Inc.

2

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

A. General Description of the Debtor

On March 1, 2018 the Debtor filed its Chapter 11 bankruptcy petition. This is the Debtor's first voluntary bankruptcy petition filing. The Debtor was formed in 2009 and has been a 3PL (third-party logistics) provider of warehousing and distribution services for clients importing apparel from overseas. Debtor has specialized in providing receiving and shipping services of overseas products to various retailers throughout the country including but not limited to Walmart, Target, JC Penny etc. Occasionally, the products which were mostly apparel, needed additional services such as adding hangers or placing price tickets, which services the Debtor also undertook prior to packaging and shipping the products. Throughout the years, the Debtor established several reputable contacts in the industry. See Declaration of Pavan Makker ("Makker Declaration").

Debtor was doing well until 2014 when it began having financial problems that continued into 2015. The Long Beach port employees went on strike, as a result of which the Debtor incurred substantial financial damage due to complete loss of sales. See Makker Declaration.

One of the Debtor's major clients, Argento, initiated a dispute with the Debtor in late 2016 and began withholding funds otherwise due to the Debtor. Debtor gave Argento a 90-day notice to remove its merchandise from the building the Debtor was leasing. When Argento was unable to remove its merchandise within the required 90-day period, Debtor agreed to give Argento an extension for agreed additional charges. When the additional charges came due, Argento refused to pay. Debtor placed a hold on Argento's account by refusing to ship them and the dispute ended up in the Superior Court for San Bernardino County, Case No.: CIVDS 1620909. While

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

in dispute with Argento, Debtor could not pay its rent and was evicted in February 2017. See Makker Declaration.

At that time, the racking and Forklift supplier, Raymond Handling, repossessed all the racking and forklifts. Debtor tried to continue the business from a temporary location, however, in or about October 2017 - November of 2017, all six of Debtor's tractors were also repossessed. See Makker Declaration.

Since the Debtor no longer has a facility to provide the services in-house, the Debtor now primarily operates from its principal's residence with most of the work done via telephone and email. This eliminates the need for the Debtor to carry any overhead as well as labor cost and will allow the Debtor to focus completely on sales to increase the Debtor's earning potential. See Makker Declaration.

Debtor will now outsource the business and the projects to other 3PL providers through brokerage partnerships. Debtor will offer consulting services to other 3PL warehouses and trucking companies and will also act as a sales agent for its clients' portfolios. Debtor will advise and assist negotiations and operations of various long-term projects. For these consultancy services, Debtor expects to earn sales commissions. See Makker Declaration.

Debtor does not hold an interest in any real estate. Debtor's secured creditor is the Internal Revenue Service ("IRS"). Debtor's unsecured priority creditors are the Employment Development Department, Franchise Tax Board and State Board of Equalization. Debtor also has unsecured general creditor claims with an estimated aggregate claim amount of $1,792,603. See Makker Declaration.

///

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

B. <u>Event Precipitating the Chapter 11 Bankruptcy Filing</u>

The events that precipitated the filing of the present bankruptcy were the pending lawsuits by various clients against the Debtor and an IRS tax levy. *See* <u>Makker Declaration</u>.

C. <u>Proposed Use of Cash Collateral</u>

Debtor currently has $611.72 in its DIP bank account. Debtor also currently has accounts receivables of approximately $5,000 - $7,000, which it anticipates to collect within the next few weeks. Debtor also has approximately $2,000 in personal property assets, which consist of used computers, phones, desks and cabinets, that are presently located in a storage facility. The cash, accounts receivables and personal property constitute cash collateral pursuant to §363(a) of the Bankruptcy Code. The Debtor proposes that it use the cash collateral in the bank as well as accounts receivables collected to pay the allowed expenses pursuant to the Debtor's budget attached hereto. The Debtor believes that the expenses described in **Exhibit "1"** (the "Budget") represent those expenses that the Debtor must pay in order to maintain its business operations. *See* <u>Makker Declaration</u>.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from the total expenses contained in the budget by no more than 10% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order. *See* <u>Makker Declaration</u>.

In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay the necessary business expenses listed in the attached Budget. The Debtor's business, and the Debtor's prospects for a successful reorganization, would be significantly harmed. *See* <u>Makker Declaration</u>.

///

///

## II. ADEQUATE PROTECTION

The Debtor proposes to give to the IRS a post-petition replacement lien on all of its post-petition assets up to the value of the cash collateral actually used post-petition. The Debtor is also proposing a monthly adequate protection payment to the IRS in the amount of $3,000, which payment will be due by the 1st of every month effective April 1, 2018.

The Debtor proposes that it be authorized to use the cash collateral for the purpose of paying the reasonable, necessary and ordinary expenses of operating the business. No expenditure will be made in excess of any line item on **Exhibit "1"** attached hereto, without the express written consent of the IRS in advance unless such expenditure is an emergency and then the Debtor shall notify the IRS of the expenditure immediately.

## III. DISCUSSION

### A. The Court Should Authorize The Debtor's Interim Use of the Cash Collateral.

As a general matter, a debtor-in-possession is permitted to use property of the estate in the ordinary course of business without the need for notice or a hearing. 11 U.S.C. Section 363(c)(1). However, a debtor's use of cash collateral is an exception to this general rule. Section 363(c)(2) provides in pertinent part:

> "The [debtor in possession] may not use, sell, or lease cash
> collateral ... unless -
> (A)    each entity that has an interest in
> such    cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale
> or lease in accordance with the provisions of this section."

11 U.S.C. Section 363(c)(2).

Courts have consistently held that it is appropriate for a Chapter 11 debtor to use a

6

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

secured creditor's cash collateral for a reasonable period of time for the purpose of maintaining and operating its property. See *MBank Dallas, N.A. v. O'Connor) (In re O'Connor)*, 808 F.2d 1393, 1397 (10th Cir. 1987). In addition, where, as here, the debtor is operating a business, it is extremely important that use of cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).

As set forth above, if the Debtor's access to the cash collateral is interrupted for even a brief period of time, the consequences would be disastrous for the creditors of the estate. The Debtor would be unable to operate and preserve the business, and the business would shut down making its value zero. As such, it would be in the overwhelming best interests of the estate and its creditors for the Debtor to be authorized to use the cash collateral to continue to operate and maintain its business.

### B. The Secured Creditor's Interest Is Adequately Protected by the Replacement Lien, the Continued Operation of the Debtor and Monthly Adequate Protection Payments Proposed by the Debtor

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). See also *O'Connor, supra*, 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings Association (In re McCombs Properties VI, Ltd.)*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988). In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral. See *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit(s) the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral."

7

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

*McCombs*, supra, 88 B.R. at 266.

As a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral. *In re Stein*, supra, 19 B.R. at 460; see also *McCombs*, supra, 88 B.R. at 267. The Debtor intends to use the cash collateral to operate and preserve the business as is set forth in **Exhibit "1."** The use of cash collateral is essential to continue the ordinary maintenance and operations of the business. Without the use of the cash collateral, the Debtor will be unable to pay the necessary expenses in order to continue its operation. As such, unless the Debtor is permitted to use the cash collateral, the value of the business will rapidly diminish.

### C. In Determining Adequate Protection, The Court Should Promote Reorganization.

In determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, supra, the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

8

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

808 F.2d at 1937.

In order to promote Debtor's reorganization, the Court should grant the relief requested herein. The Debtor has demonstrated herein that the use of the cash collateral as proposed by the Debtor will preserve the business for the benefit of this estate and the creditors, specifically the Secured Creditor. Indeed, a successful reorganization depends upon the use of cash collateral as proposed herein.

## IV. CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that this Court grant the relief herein requested, authorizing use of cash collateral on the terms and conditions described in the Motion and the exhibit thereto and granting such other and further relief as is just and proper under the circumstances.

Dated: 3/13/2018                           LAW OFFICES OF MICHAEL JAY BERGER

By: _____
MICHAEL JAY BERGER
Proposed Counsel for Debtor,
Yankee Clipper Distribution of California, Inc.

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

## DECLARATION OF PAVAN MAKKER

I, Pavan Makker, declare and state as follows:

1. I am the owner and the chief executive officer of debtor and debtor-in-possession in the above-captioned matter (the "Debtor"). I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2. On March 1, 2018 the Debtor filed its Chapter 11 bankruptcy petition. This is the Debtor's first voluntary bankruptcy petition filing. The Debtor was formed in 2009 and has been a 3PL (third-party logistics) provider of warehousing and distribution services for clients importing apparel from overseas. Debtor has specialized in providing receiving and shipping services of overseas products to various retailers throughout the country including but not limited to Walmart, Target, JC Penny etc. Occasionally, the products which were mostly apparel, needed additional services such as adding hangers or placing price tickets, which services the Debtor also undertook prior to packaging and shipping the products. Throughout the years, the Debtor established several reputable contacts in the industry.

3. Debtor was doing well until 2014 when it began having financial problems that continued into 2015. The Long Beach port employees went on strike, as a result of which the Debtor incurred substantial financial damage due to complete loss of sales.

4. One of the Debtor's major clients, Argento, initiated a dispute with the Debtor in late 2016 and began withholding funds otherwise due to the Debtor. Debtor gave Argento a 90-day notice to remove its merchandise from the building the Debtor was leasing. When Argento was unable to remove its merchandise within the required 90-day period, Debtor agreed to give Argento an extension for agreed additional charges. When the additional charges came due, Argento refused to pay. Debtor placed a hold on Argento's account by refusing to ship them and the dispute ended up in the Superior Court for San Bernardino County, Case No.: CIVDS 1620909. While in dispute with Argento, Debtor could not pay its rent and was evicted in February 2017.

10

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

5.At that time, the racking and Forklift supplier, Raymond Handling, repossessed all the racking and forklifts. Debtor tried to continue the business from a temporary location, however, in or about October 2017 - November of 2017, all six of Debtor's tractors were also repossessed.

6.Since the Debtor no longer has a facility to provide the services in-house, the Debtor now primarily operates from its principal's residence with most of the work done via telephone and email. This eliminates the need for the Debtor to carry any overhead as well as labor cost and will allow the Debtor to focus completely on sales to increase the Debtor's earning potential.

7.Debtor will now outsource the business and the projects to other 3PL providers through brokerage partnerships. Debtor will offer consulting services to other 3PL warehouses and trucking companies and will also act as a sales agent for its clients' portfolios. Debtor will advise and assist negotiations and operations of various long-term projects. For these consultancy services, Debtor expects to earn sales commissions.

8.Debtor does not hold an interest in any real estate. Debtor's secured creditor is the Internal Revenue Service ("IRS"). Debtor's unsecured priority creditors are the Employment Development Department, Franchise Tax Board and State Board of Equalization. Debtor also has unsecured general creditor claims with an estimated aggregate claim amount of $1,792,603.

9.The events that precipitated the filing of the present bankruptcy were the pending lawsuits by various clients against the Debtor and an IRS tax levy.

10.Debtor currently has $611.72 in its DIP bank account. Debtor also currently has accounts receivables of approximately $5,000 - $7,000, which it anticipates to collect within the next few weeks. Debtor also has approximately $2,000 in personal property assets, which consist of used computers, phones, desks and cabinets, that are presently located in a storage facility. The cash, accounts receivables and personal property constitute cash collateral pursuant to §363(a) of the Bankruptcy Code. The Debtor proposes that it use the cash collateral in the

11

DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

bank as well as accounts receivables collected to pay the allowed expenses pursuant to the Debtor's budget attached hereto. The Debtor believes that the expenses described in **Exhibit "1"** (the "Budget") represent those expenses that the Debtor must pay in order to maintain its business operations.

11. Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from the total expenses contained in the budget by no more than 10% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

12. In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay the necessary business expenses listed in the attached Budget. The Debtor's business, and the Debtor's prospects for a successful reorganization, would be significantly harmed.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on March 13, 2018 at Eastvale, California.

*/s/ Pavan Makker*

Pavan Makker

12

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF

# EXHIBIT 1

Projected 6 Months of Income and Expenses for Yankee Clipper Distribution of California, Inc.

| | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Brokerage Commisions and Consulting Fees | $12,000.00 | $12,500.00 | $13,000.00 | $13,500.00 | $14,000.00 | $15,000.00 |
| | | | | | | |
| **Gross Income** | **$12,000.00** | **$12,500.00** | **$13,000.00** | **$13,500.00** | **$14,000.00** | **$15,000.00** |
| | | | | | | |
| **Expenses** | | | | | | |
| Internet/Phone | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 | $75.00 |
| Gas | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Liability Insurance | $125.00 | $125.00 | $125.00 | $125.00 | $125.00 | $125.00 |
| Business License | $114.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Payment to Insiders (Pavan) | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 |
| Payroll Taxes | $720.00 | $720.00 | $720.00 | $720.00 | $720.00 | $720.00 |
| Proposed Adequate Protection Payment to IRS | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 |
| Proposed Bankruptcy Attorney Fees (Subject to Court approval) | | | | $7,500.00 | | |
| Estimated U.S. Trustee Quarterly Fees | | $325.00 | | | $325.00 | |
| **Total Expenses** | **$5,934.00** | **$5,100.00** | **$8,820.00** | **$16,320.00** | **$5,100.00** | **$5,100.00** |
| **Net Income** | **$6,066.00** | **$7,400.00** | **$4,180.00** | **-$2,820.00** | **$8,900.00** | **$9,900.00** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR AN ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; DECLARATION OF PAVAN MAKKER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/13/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Attorney for Debtor: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Icon Owner Pool: Ronald K Brown    ron@rkbrownlaw.com
Interested Party: Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
U.S. Trustee: Everett L Green    everett.l.green@usdoj.gov
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 3/13/2018 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Chapter 11 Debtor**
**Yankee Clipper Distribution of California, Inc.**
**7426 Cherry Ave Suite 210**
**PO Box 323**
**Fontana, CA 92336**

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 3/13/2018 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Meredith A. Jury
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 325 / Courtroom 301
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/13/2018 | Peter Garza | /s/ Peter Garza |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                  F 9013-3.1.PROOF.SERVICE

**2. SERVED BY UNITED STATES MAIL:**

Secured Creditors:

IRS
PO Box 7346
Philadelphia, PA 19101

20 Largest Unsecured Creditors:

BMO Harris Bank
Attorney: Deborah S. Cochran
420 Walnut Ave.
San Diego, CA 92103

Belmar
Attorney: Richard T. Miller
7120 Hayvenhurst Ave., Ste 108
Van Nuys, CA 91406

Cali Staffing
17725 E. Foothill Blvd., Ste 200
Fontana, CA 92335

Canon Financial Services
Hettena Law Firm
31348 Via Colinas
Thousand Oaks, CA 91362

Cats
557 Cranbury Road, Suite 16
East Brunswick, NJ 08816

Charlyes Pallets
5571 26th Street
Riverside, CA 92509

Compass Chassis
6345 Coliseum Way
Oakland, CA 94621

Cybernet Communications
7750 Gloria Avenue
Van Nuys, CA 91406

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                            F 9013-3.1.PROOF.SERVICE

Daimler Truck Financial
1999 Bryan St., Ste 900
Dallas, TX 75201

E & J Ticorp.
18601 S. Susana Rd
Compton, CA 90221

Employment Development Department
Taxpayer Assistance Center
P O Box 826880
Sacramento, CA 94280-0001

Fairway Staffing Services
17610 Bellflower Blvd., Ste 204
Bellflower, CA 90706

GC Pallets
13805 Slove Avenue
Fontana, CA 92337

Icon Pool Owner
Attorney: Richard L. Seide
901 Dove Str., Suite 120
Newport Beach, CA 92660

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

James Feltman - Ch. 11 Trustee
c/o Thomas Geher, Esq.
1900 Avenue of the Stars
Los Angeles, CA 90067

Meza Pallets
14619 Merrill Ave.
Fontana, CA 92335

National Funding
9820 Towne Center Dr.
San Diego, CA 92121

Pilot
Attorney: Matthew Groseclose
2049 Century Park East, #2900
Los Angeles, CA 90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Woodland Pallet Corp.
16760 Boyele Ave
Fontana, CA 92337

Additional Creditors:

Burkhalter Kessler Clement George L
Attn: Amber M. Sanchez, Esq.
2020 Main Street, Suite 600
Irvine, CA 92614

CBF Transportations
9215 Cedartree Rd
Downey, CA 90240

Jet Salers Inc.
7305 Paramount Blvd.
Pico Rivera, CA 90660

Kelly Makkar
13322 Los Robles Ct.
Corona, CA 92880

Pavan Makkar
13322 Los Robles Ct.
Corona, CA 92880

State Board of Equalization
CA Dept. of Tax and Fees
Acct. Info. Group MIC 29
PO Box 942879
Sacramento, CA 94279

TeleTrac Inc.
Hettena Law Firm
31348 Via Colinas
Westlake Village, CA 91362

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE